**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **REGINALD TYRONE MADDOX,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **NO. 5:09-CR-00026 (CAR)** |
| **VS.** | : | **NO. 5:11-CV-90096 (CAR)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **Proceedings Under 28 U.S.C. § 2255** |
| | : | **Before the U.S. Magistrate Judge** |
| **Respondent.** | : | |
| _____ | : | |

## RECOMMENDATION

Before the Court is Petitioner Reginald Tyrone Maddox's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 282. In the motion, Petitioner makes three claims: (1) that his first appointed attorney rendered ineffective assistance during the plea negotiation process; (2) that his first appointed attorney had a conflict of interest that adversely affected his performance; and (3) that his second appointed attorney rendered ineffective assistance by not moving to withdraw Petitioner's guilty plea before sentencing. Id. Because Petitioner fails to establish that either of his attorneys performed unreasonably and that Petitioner was prejudiced as a result of either attorney's deficient performance, and because Petitioner fails to establish that either of his attorneys had an actual conflict of interest, it is hereby **RECOMMENDED** that Petitioner's motion be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2009, a grand jury in this Court returned a single-count indictment against Petitioner and ten co-defendants. Doc. 1. The indictment charged Petitioner with one count of conspiracy to possess with intent to distribute more than fifty grams of cocaine base and more

than five kilograms of cocaine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(ii), 21 U.S.C. § 841(b)(1)(A)(iii), and 18 U.S.C. § 2. Id.

After negotiations, Petitioner and the Government entered a written plea agreement. Doc. 178. The plea agreement provided that: (1) Petitioner knowingly and voluntarily will enter a guilty plea to the single-count indictment; (2) Petitioner's guilty plea will subject him to a mandatory minimum sentence of 120 months imprisonment; (3) the Court is not bound by any estimate of the sentencing range that Petitioner received from his attorney or the Government; (4) Petitioner will not be allowed to withdraw his guilty plea because he received an estimated sentencing range from his attorney or the Government that differs from the advisory sentencing range calculated in his Presentence Investigation Report (PSR) and found to be correct by the Court; (5) the Court will not be able to determine the appropriate advisory sentencing range until after the PSR has been completed; and (6) Petitioner will not be allowed to withdraw his guilty plea as a result of any objections he has to the PSR, the Court's evaluation of the PSR, or the Court's sentence. Id. at ¶¶ (3)(A)-(D). Petitioner and his first appointed attorney, Brian Randall, initialed each page and signed the last page of the plea agreement. Id. at ¶ (8). By signing the agreement, Petitioner confirmed that he fully understood the plea agreement and that he agreed to all of its terms. Id.

On October 14, 2009, Petitioner pleaded guilty to the indictment as charged. Doc. 285. During the change of plea hearing, the Court concluded that Petitioner was "fully competent and capable of entering an informed plea" and that Petitioner was "aware of the nature of the charges and the consequences of the plea." Id. at p. 14. Because Petitioner's guilty plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential

elements of the offense[,]" the Court accepted Petitioner's guilty plea and ordered that a PSR be completed to assist the Court with sentencing. Id.

Before Petitioner's sentencing hearing, Randall filed a motion to withdraw as counsel for Petitioner. Doc. 236. In the motion, Randall informed the Court that Petitioner and Randall had reviewed the PSR together and that Randall had filed objections to the PSR. Id. at ¶ (2). Randall requested to withdraw because of unspecified issues regarding his representation of Petitioner "that are causing conflict and difficulty in [Randall's] continued ability to represent [Petitioner] at his sentencing hearing." Id. at ¶ (3). The Court granted the motion to withdraw and appointed Scott Huggins as Petitioner's second appointed attorney. Doc. 237.

On February 19, 2010, after reviewing the PSR and Petitioner's objections to it, the Court sentenced Petitioner to the mandatory minimum sentence of 120 months imprisonment followed by 5 years of supervised release. Doc. 260. Petitioner timely filed the instant section 2255 motion on February 18, 2011. Doc. 282. The Government responded on March 24, 2011. Doc. 286. Petitioner replied to the Government's response on January 23, 2012. Doc. 309.

DISCUSSION

In his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, Petitioner enumerates three issues, namely that: (1) Petitioner's first appointed attorney, Brian Randall, rendered ineffective assistance during the plea negotiation process by not fully investigating the law before advising Petitioner to plead guilty based on an incorrect estimated sentencing range; (2) Randall had an actual conflict of interest that adversely affected his performance; and (3) Petitioner's second appointed attorney, Scott Huggins, rendered ineffective

3

assistance by not moving to withdraw Petitioner's guilty plea before sentencing. Doc. 282.[1] Because Petitioner fails to establish that either Randall or Huggins performed unreasonably and that Petitioner was prejudiced as a result, and because Petitioner fails to show that either Randall or Huggins had an actual conflict of interest, Petitioner is not entitled to any relief.

### A.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, "a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003), citing Strickland, 466 U.S. at 687. To establish deficient performance, "Petitioner must show counsel's performance 'fell below an objective standard of reasonableness.'" Cook v. Warden, Georgia Diagnostic Prison, 677 F.3d 1133, 1136 (11th Cir. 2012), quoting Strickland, 466 U.S. at 688. To establish prejudice, "Petitioner must show that a 'reasonable probability' exists that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Cook, 677 F.3d at 1136, quoting Strickland, 466 U.S. at 697. The two-prong Strickland test applies to challenges of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A petitioner claiming ineffective assistance in the context of a guilty plea must

---

[1] In Petitioner's reply brief, Petitioner also alleges that he was denied "his Sixth Amendment right to self-representation with assistance of counsel by [the] failure of the court to allow him to control and manage his own affairs with assistance." Doc. 309, p. 3. Preliminarily, there is no evidence on the record to bolster this seemingly new claim by Petitioner. Moreover, most of the allegations in Petitioner's reply brief about this seemingly new claim relate to Petitioner's existing ineffective assistance of counsel and conflict of interest claims. See e.g., Doc. 309, p. 3 ("Petitioner was subject to constructive denial of assistance, state interference and conflict of interest, because of counsels['] failure to research the law and withdraw the plea agreement until all the parties understand the sentencing guidelines."). Accordingly, the allegations in Petitioner's reply brief do not require separate analysis and will be addressed in the context of his existing claims.

show not only that counsel committed objectively unreasonable professional errors, but also a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 58–59.

Concerning his first appointed attorney, Petitioner alleges that Randall performed deficiently because Randall failed to investigate the law fully before advising Petitioner to plead guilty, and therefore failed to determine that Petitioner would not be eligible for safety valve relief in light of Petitioner's prior criminal history.[2] According to Petitioner, both Randall and the Government incorrectly calculated Petitioner's estimated sentencing range to be 87-108 months because of Randall's failure to fully investigate the law. Petitioner further alleges that he suffered prejudice because he pleaded guilty based on the incorrect estimated sentencing range he received from Randall, which exposed him to a mandatory minimum sentence of 120 months, rather than the 87-108 months that Randall and the Government mistakenly believed Petitioner would receive under the safety valve.

Petitioner's allegations about Randall do not satisfy the first prong of Strickland. The Government concedes that both Randall and the Government incorrectly calculated Petitioner's estimated sentencing range during the plea negotiation process. Doc. 286, p. 8. This concession, however, does not satisfy Petitioner's burden to show, by a preponderance of competent evidence, that Randall's performance was deficient. Chandler v. United States, 218 F.3d 1305,

---

[2] The so-called "safety valve" enables courts to sentence without regard to the statutory minimum sentence for certain offenses if the defendant meets five specific requirements. See 18 U.S.C. § 3553(f); see also U.S.S.G. § 5C1.2. It is undisputed that Petitioner was not eligible for safety valve relief because the Eleventh Circuit previously held that the sentencing guidelines mandate the imposition of criminal history points even where, as here, the prior offenses were adjudicated under Georgia's First Offender Act. See e.g., United States v. Barner, 572 F.3d 1239, 1253 (11th Cir. 2009).

1313 (11th Cir.2000). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation." Chandler, 218 F.3d at 1314, n. 15. Where the record is incomplete or unclear about counsel's actions, it will be presumed that counsel did what he should have done, and that he exercised reasonable professional judgment. Id.

The record undermines Petitioner's claim that he pleaded guilty based on Randall's advice about Petitioner's eligibility for the safety valve and the incorrect estimated sentencing range that Petitioner received from Randall during the plea negotiation process. Neither the plea agreement nor the change of plea hearing transcript discuss Petitioner's eligibility for the safety valve or Petitioner's reliance on the incorrect estimated sentencing range he received from Randall as the basis of Petitioner's guilty plea. Rather, during the change of plea hearing, the Court engaged in the following exchange with Petitioner:

> THE COURT: Have you had the opportunity to talk with your attorney about pleading guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I think I gave you an extra week. Was it last Thursday or Friday?
>
> MR. RANDALL: It was last Friday.
>
> THE COURT: Are you fully satisfied with the counsel and advice given to you in this case by your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And based on everything that you know at this time, has he represented you in a proper and competent way?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, there is a plea agreement. Have you fully read the plea agreement and signed it and is that your signature on the last page?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And have you initialed each page?

THE DEFENDANT: Yes, sir.

THE COURT: And did you have the full opportunity to read and discuss the plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, sir.

THE COURT: Does the plea agreement accurately represent the understanding you have with the government?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone made any other promise or assurance of any kind to get you to plead guilty in this case?

THE DEFENDANT: No sir.

THE COURT: Do you understand that the terms of the plea agreement are merely recommendations to the Court and that the Court can reject the recommendations and impose a longer sentence than you may anticipate and you cannot withdraw your guilty plea?

THE DEFENDANT: Yes, sir.

[Doc. 285 at pp. 8-9.]

After the Government explained that by pleading guilty Petitioner would expose himself to a mandatory minimum sentence of 120 months imprisonment and a maximum sentence of life imprisonment, the Court asked Petitioner if he had any questions about his possible sentence, to which Petitioner responded "[n]o, sir." Id. at p. 11. The Court then reviewed the sentencing guidelines and other issues regarding Petitioner's likely sentence with the parties as follows:

THE COURT: Now, there are advisory sentencing guidelines that will apply in your case. Have you and your attorney talked about how the sentencing guidelines might apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any stipulations of facts relevant to the applications of the guidelines other than the amount?

MR. CALHOUN: No, Your Honor.

THE COURT: Any other issues related to Booker or anything like that?

MR. RANDALL: Not related to Booker, Your Honor.

THE COURT: Do you understand that the Court will not be able to determine the advisory guideline sentence for your case until after the presentence report has been completed?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that based upon the Court's findings of fact, the sentence imposed may be different from any estimate your attorney may give you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand, therefore, that you should not plead guilty based on any estimate anyone has given you about the sentencing guideline range that might apply in your case?

THE DEFENDANT: Yes sir.

[Id. at pp. 11-12.]

Accepting as true that Randall incorrectly calculated Petitioner's estimated sentencing range during the plea negotiation process, Randall's failure to accurately predict how the sentencing guidelines would apply to Petitioner does not amount to deficient performance, where, as here, Petitioner identifies no evidence in the record that is "sufficient to disprove the strong and continuing presumption of effective representation." Chandler, 218 F.3d at 1314, n. 15.

Moreover, in United States v. Pease, 240 F.3d 938 (11th Cir. 2001), a case with facts somewhat similar to the facts here, the Eleventh Circuit affirmed the denial of a motion to withdraw a guilty plea where the defendant argued that he pleaded guilty because his attorney inaccurately predicted that the defendant would face a sentence of 5-10 years under the terms of the plea agreement. Pease, 240 F.3d at 940-941. Even though the defendant ultimately received a

sentence of 30 years, the Eleventh Circuit declined to find that his attorney rendered ineffective assistance because the defendant failed to establish that his attorney was deficient as a result of the inaccurate sentencing prediction. Id. at 941; see also Krecht v. United States, 846 F.Supp.2d 1268, 1281 (S.D. Fla. 2012) ("Generally, counsel's erroneous predictions or estimates do not rise to the level of deficient performance or render a plea involuntary."). Accordingly, Petitioner does not establish that Randall performed deficiently as required under the first prong of Strickland.

Even if Randall performed deficiently in advising Petitioner about his eligibility for the safety valve and his estimated sentencing range, Petitioner does not satisfy the second prong of Strickland because he fails to show that he suffered prejudice as a result of Randall's allegedly deficient performance. See Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000). Both the plea agreement and the change of plea hearing transcript are silent concerning Petitioner's eligibility for the safety valve and Petitioner's reliance on the incorrect estimated sentencing range he received from Randall during the plea negotiation process. Although Petitioner had multiple opportunities to ask the Court questions about the terms of the plea agreement, the safety valve, and the sentencing guidelines during the change of plea hearing, Petitioner did not ask any questions or express any confusion about these issues. Instead, Petitioner confirmed that he was not relying on any outside promise or assurance of any kind from anyone in pleading guilty. Doc. 285, p. 9. Petitioner also unambiguously stated that he understood that by pleading guilty he would expose himself to a mandatory minimum sentence of 120 months imprisonment and that the sentence ultimately imposed by the Court could differ from any estimated sentencing range provided by Randall. Id. at pp. 10-12. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Where, as here, there is no indication in the record

9

that but for Randall's allegedly deficient performance, Petitioner would not have pleaded guilty and would have insisted on proceeding to trial, Petitioner's "bare allegation" that he would not have pleaded guilty is insufficient to establish prejudice. Roach v. Roberts, 373 Fed. Appx. 983, 985 (11th Cir. 2010); United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985), abrogated on other grounds, Padilla v. Kentucky, 130 S.Ct. 1473 (2010). Because Petitioner does not establish that he would not have pleaded guilty and would have insisted on going to trial but for Randall's errors, Petitioner fails to show that he suffered prejudice as required under the second prong of Strickland.

Concerning his second appointed attorney, Petitioner alleges that Huggins rendered ineffective assistance by not moving to withdraw Petitioner's guilty plea before sentencing. Petitioner does not claim that he specifically requested that Huggins file a motion to withdraw his guilty plea at any point after the Court appointed Huggins but before the Court sentenced Petitioner. Rather, Petitioner argues that if Huggins had asked Petitioner about withdrawing his guilty plea at the sentencing hearing, Petitioner would have requested that Huggins move to withdraw his guilty plea.

Petitioner's allegations about Huggins do not satisfy either prong of Strickland. Petitioner not only fails to establish that no objectively competent attorney would have taken the action that Huggins took, but Petitioner also fails to establish that the outcome of the case would have been different if Petitioner moved to withdraw Petitioner's guilty plea. See Van Poyck v. Florida Department of Corrections, 290 F.3d 1318, 1322-1323 (11th Cir. 2002). A review of the record reveals that before Randall moved to withdraw as Petitioner's first appointed counsel, Randall filed written objections to the PSI that raised the specific issue of Petitioner's eligibility for

10

safety valve relief if the PSI did not assess criminal history points for two of Petitioner's prior criminal offenses adjudicated under Georgia's First Offender Act. Doc. 234. At the sentencing hearing, Huggins underscored these written objections and argued that assessing criminal history points for offenses adjudicated under Georgia's First Offender Act was "unfair and uncompromising." Doc. 260, p. 2. Faced with controlling case law that directly contradicted his argument, see United States v. Barner, 572 F.3d 1239, 1253 (11th Cir. 2009), Huggins reasonably reiterated his objections about assessing criminal history points under the unique facts of this case because both Randall and the Government mistakenly assumed that Petitioner would qualify for safety valve relief during the plea negotiation process. Doc. 260, p. 3.

Petitioner identifies no evidence in the record to bolster his claim that Petitioner would have requested that Huggins move to withdraw Petitioner's guilty plea if Huggins had asked him during the sentencing hearing. In fact, the sentencing hearing transcript belies Petitioner's claim because Huggins expressly acknowledged that, "as the plea agreement notes, just because he might get a higher sentence or a higher estimated guideline range is no reason for him to withdraw the plea. He is not here seeking to withdraw his plea. I don't know what else to say. The law is not on my side." Id. Moreover, when the Court invited Petitioner to address the Court at the sentencing hearing, Petitioner requested leniency, but he did not ask to withdraw his guilty plea or to confer more with Huggins about his options prior to sentencing. Id. pp. 6-7. Huggins did not render ineffective assistance by not moving to withdraw Petitioner's guilty plea based on the same issue that Randall previously identified in his written objections to the PSI and that Huggins fully argued before the Court during the sentencing hearing where there is no indication on the record that Petitioner wished to withdraw his guilty plea. See Freeman v. Attorney General, 536 F.3d 1225, 1233 (11th Cir. 2008), citing Chandler, 240 F.3d at 917 (explaining that

an attorney is not ineffective for failing to raise a meritless claim). Accordingly, Petitioner's allegations about Huggins do not satisfy either prong of <u>Strickland</u>.

## B.  Conflict of Interest

"To demonstrate a Sixth Amendment violation based on an attorney conflict of interest, the Supreme Court requires that [Petitioner] 'establish that an actual conflict of interest adversely affected his lawyer's performance.'" <u>Owen v. Secretary for Department of Corrections</u>, 568 F.3d 894, 913 (11th Cir. 2009), quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980). The mere possibility of a conflict of interest is insufficient. <u>Id</u>. To establish an actual conflict, Petitioner must identify "specific instances in the record to suggest an actual conflict or impairment of [his] interests." <u>Smith v. White</u>, 815 F.2d 1401, 1404 (11th Cir. 1987). Stated another way, "[a]n 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" <u>Freund v. Butterworth</u>, 165 F.3d 839, 859 (11th Cir. 1999), quoting <u>Smith</u>, 815 F.2d at 1405. To establish an adverse effect, Petitioner must satisfy three elements, namely that: (1) "some plausible alternative defense strategy or tactic might have been pursued[;]" (2) "the alternative strategy or tactic was reasonable under the facts[;]" and (3) "some link between actual conflict and decision to forgo alternative strategy of defense." <u>Freund</u>, 165 F.3d at 860 (internal citations omitted).

Petitioner alleges that the Court already concluded that Randall had an actual conflict of interest because the Court granted Randall's motion to withdraw as Petitioner's first appointed attorney. According to Petitioner, because of Randall's actual conflict of interest, Randall failed to fully investigate the law and determine that Petitioner would not be eligible for safety valve relief in light of Petitioner's prior criminal history before Randall advised Petitioner to plead guilty. Doc. 282. In his reply brief, Petitioner further expands his conflict of interest claim to

12

include his second appointed counsel, Huggins. Doc. 309. Petitioner specifically alleges that, "[i]n the instant case, the two federal defenders clearly had a conflict of interest to dispose of this case without even a [cursory] reading of the guidelines. They were more interested in getting home early on Friday and failed to consider the 33 months loss of liberty of the defendant from his wife and children." Id. at p. 5.

Petitioner's unsubstantiated claim that both Randall and Huggins had an actual conflict of interest that adversely affected their performance misunderstands the law. Petitioner fails to present any evidence that either Randall or Huggins ever represented anyone's interest other than his. The mere fact that the Court granted Randall's motion to withdraw as Petitioner's first appointed counsel does not satisfy Petitioner's burden to identify "specific instances in the record to suggest an actual conflict or impairment of [his] interests." Smith, 815 F.2d at 1404. Additionally, there is nothing on the record to support Petitioner's conclusory claim that Huggins had "inconsistent interests" that hindered his ability to represent Petitioner at the sentencing hearing. See Freund, 165 F.3d at 859, quoting Smith, 815 F.2d at 1405 ("An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'"). It is well-established in the Eleventh Circuit that "[t]o satisfy the 'actual conflict' prong, [Petitioner] must show something more than a possible, speculative, or a merely hypothetical conflict." Reynolds v. Chapman, 253 F.3d 1337, 1342–1343 (11th Cir. 2001). Because Petitioner wholly fails to identify any specific instances in the record to show something more than "a possible, speculative, or a merely hypothetical conflict" by either of his appointed attorneys, Petitioner does not establish that either Randall or Huggins labored under an actual conflict of interest. Id. Accordingly, Petitioner's conflict of interest claim must fail.

13

### C.  Evidentiary Hearing

Finally, an evidentiary hearing is not needed in this case. It is Petitioner's burden to establish the need for an evidentiary hearing, and the Court is not required to hold an evidentiary hearing when the existing record "make[s] manifest the lack of merit of a Section 2255 claim." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984). As explained above, the existing record establishes that the claims identified in Petitioner's section 2255 motion lack merit, and thus, there is no need to hold an evidentiary hearing pursuant to 28 U.S.C. § 2255(b).

CONCLUSION

Because Petitioner fails to establish that either of his appointed attorneys performed unreasonably and that Petitioner was prejudiced as a result, and because Petitioner fails to establish that either of his appointed attorneys had an actual conflict of interest, it is **RECOMMENDED** that Petitioner Reginald Tyrone Maddox's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be **DENIED.** In addition, and pursuant to the requirements of Rule 11(a) of the Rules Governing Section 2255 Proceedings, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2255(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-484 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, **IT IS FURTHER RECOMMENDED** that the Court **DENY** a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 9th day of October, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge